THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00165-MR

| PARKER EXCAVATING, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OF** |
| HIGHLANDS AT CULLOWHEE, LLC; | ) | **DECISION AND ORDER** |
| R&R CULLOWHEE, LLC; JOSEPH | ) | |
| RILEY JOHNSON; and RANDAL | ) | |
| HOMER, | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on the Defendants' Joint Motion to Dismiss. [Doc. 5].

**I.   BACKGROUND**

Parker Excavating, Inc. (the **"Plaintiff"**) is a North Carolina corporation and a licensed general contractor. [Doc. 1-2 at ¶ 1]. Highlands at Cullowhee, LLC ("Highlands") is a Georgia limited liability corporation. [Id. at ¶ 2]. R&R Cullowhee, LLC ("R&R") is a Texas limited liability corporation. [Id. at ¶ 3]. Randal Homer ("Homer") is a citizen of Georgia and serves as a member of Highlands and R&R. [Id. at ¶ 5]. Joseph Riley Johnson ("Johnson" and collectively with Highlands, R&R and Homer, the "Defendants") is a citizen of Georgia and serves as the registered agent for Highlands. [Id. at ¶ 4].

Johnson also serves as the member manager for JOMCO, Inc. ("JOMCO"), a Georgia corporation. [Id. at ¶ 11].

In March 2017, Highlands purchased approximately twelve acres of real property in Jackson County, North Carolina (the "Property"). [Id. at ¶ 28]. On March 15, 2017, Highlands entered into an agreement with JOMCO to build residential apartments on the Property. [Id. at ¶ 40]. In June 2017, JOMCO entered a subcontracting agreement with the Plaintiff to complete work on the Property. [Id. at ¶ 38].

On October 19, 2018, the Plaintiff completed the work and submitted a final invoice. [Id. at ¶ 39]. After JOMCO failed to pay the invoice, the Plaintiff filed a lien on the Property on October 26, 2018. [Id. at ¶ 41]. The Plaintiff never pursued its lien against the Property.

On January 19, 2019, the Plaintiff filed a complaint (the "First Action") against JOMCO, Highlands, Johnson, and others, asserting several claims for payment under the agreement between the Plaintiff and JOMCO. See Parker Excavating, Inc. v. JOMCO Contracting, LLC, et al., No. 1:19-cv-00062-MR-WCM, 2019 WL 8012205, at *1 (W.D.N.C. Dec. 17, 2019), report and recommendation adopted, No. 1:19-cv-00062-MR-WCM, 2020 WL 261758 (W.D.N.C. Jan. 17, 2020) (Reidinger, J.). The Plaintiff attempted to

pierce JOMCO's corporate veil to assert various claims against Highlands and Johnson. Id.

On July 30, 2019, the Plaintiff sought leave of court to amend its complaint in the First Action and add new allegations regarding Homer's ownership of Highlands. Id. at *1 n.1. On December 17, 2019, Magistrate Judge W. Carleton Metcalf denied the Plaintiff's request for leave to amend, concluding that the Plaintiff's proposed amendment was futile because the new allegations against Homer provided an insufficient basis to support claims against him. Id.

On January 17, 2020, the Court dismissed all of the Plaintiff's claims against Highlands and Johnson in the First Action, concluding that the Plaintiff failed to present sufficient allegations to pierce JOMCO's corporate veil.[1] Id. The Court explained that many of the Plaintiff's allegations were conclusory, and that "[t]he mere allegation that the corporate entities had some overlapping owners or agents is insufficient to give rise to alter ego liability." Id.

Highlands conveyed the Property to R&R via a special warranty deed after the Court dismissed the Plaintiff's claims against Highlands. [Doc. 1-2

---

[1] The Court also dismissed the Plaintiff's Chapter 75 and civil conspiracy claims against JOMCO.

at 100-104]. Although the first page of the deed stated that it was "made as of the 7th day of July, 2019," the parties signed the deed on January 24, 2020 and February 1 2020, and the Jackson County Register of Deeds recorded the deed on February 10, 2020. [Doc. 1-2 at 100-02]. The Defendants state that the inclusion of the July 7, 2019 date was a scrivener's error. [Doc. 3 at 6 n.2].

JOMCO defaulted in the First Action and the Court entered a default judgment against JOMCO for $170,237.32 on the breach of contract claim. Parker Excavating, Inc. v. JOMCO Contracting, LLC, No. 1:19-CV-00062-MR, 2020 WL 1821059, at *1 (W.D.N.C. Apr. 10, 2020) (Reidinger, J.).

On May 26, 2020, the Plaintiff filed this action (the "Second Action") against Highlands; R&R; Johnson; and Homer in Jackson County Superior Court, asserting claims for violation of the North Carolina Uniform Fraudulent Transfers Act, N.C. Gen. Stat. § 39-23.1 et seq. (the "UFTA"); civil conspiracy; fraud; and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 et seq. ("Chapter 75"). [Doc. 1-1]. The Plaintiff also seeks to pierce the corporate veil of Highlands and R&R to obtain relief from Johnson and Homer. [Id. at ¶¶ 74-85].

On June 29, 2020, the Defendants removed the Second Action to this Court. [Doc. 1].

4

On July 13, 2020, the Plaintiff filed a motion to vacate and set aside the Order in the First Action that dismissed the claims against Highlands and Johnson, arguing that it discovered evidence that Johnson owned JOMCO and Highlands when the Plaintiff and JOMCO entered into the agreement. Parker Excavating, Inc. v. JOMCO Contracting, LLC, No. 1:19-CV-00062-MR, 2020 WL 4734797, at *1 (W.D.N.C. Aug. 14, 2020) (Reidinger, C.J.). On August 14, 2020, the Court denied the Plaintiff's motion, concluding that there were still "no plausible allegations necessary to support the drastic remedy of disregarding the corporate existence of JOMCO[.]" Id. at *3.

The Defendants filed a Joint Motion to Dismiss for Failure to State a Claim in the Second Action. [Doc. 5]. The Plaintiff has responded. [Doc. 7]. The time for the Defendants to reply has passed.

Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In reviewing the complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

Determining whether a complaint states a plausible claim for relief is "a context-specific task," Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009), which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise the right to relief above the speculative level," Twombly, 550 U.S. at 555. As the Fourth Circuit has explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements. Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

### III. DISCUSSION

#### A. UFTA Claims

The Plaintiff asserts that Highlands' transfer of the Property to R&R was a fraudulent transfer under the UFTA. [Doc. 1-2 at ¶¶ 49-59]. Under

6

the UFTA, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith intent to hinder, delay, or defraud any creditor of the debtor." N.C. Gen. Stat. § 39–23.4(a)(1). The UFTA defines a "debtor" as any person who is liable on a right to payment, "whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." N.C. Gen. Stat. § 39–23.1(4),(6).

The Defendants move to dismiss the Plaintiff's UFTA claim, arguing that Highlands, R&R, Johnson, and Homer did not owe any debt to the Plaintiff when the Property was conveyed. [Doc. 6 at 6]. The Defendants argue that the Property was conveyed after the Court dismissed the Plaintiff's claims against Highlands and Johnson and that the Plaintiff never asserted any claims against R&R or Homer. [Id.].[2] The Plaintiff contends that the Property was conveyed in July 2019 while its claims were still pending against Highlands and Johnson, and that the Defendants tried to hide the

---

[2] The Plaintiff has presented no allegations to establish that R&R ever owed a debt to the Plaintiff.

7

conveyance by not recording it until after the Court dismissed the claims against Highlands and Johnson in 2020. [Doc. 1-2 at ¶ 71].

"A conveyance of land can only be by deed." New Home Bldg. Supply Co. v. Nations, 259 N.C. 681, 683, 131 S.E.2d 425, 427 (1963) (citation omitted). "The delivery of a deed is essential to the transfer of the title. It is the final act, without which all other formalities are ineffectual." Younge v. Guilbeau, 70 U.S. 636, 641 (1865). Accordingly, "no title passes from the grantor, or vests in the grantee, until it is delivered." Johnston v. Kramer Bros. & Co., 203 F. 733, 736 (E.D.N.C. 1913). However, the "delivery of a deed . . . cannot occur until the deed is signed by all of its grantors." White v. Farabee, 212 N.C. App. 126, 134, 713 S.E.2d 4, 10 (2011). Therefore, property cannot be conveyed until a deed is delivered, and a deed cannot be delivered until it is signed by the grantor. New Home Bldg. Supply, 259 N.C. at 683, 131 S.E.2d at 427; Younge, 70 U.S. at 641; Johnston, 203 F. at 736; White, 212 N.C. App. at 134, 713 S.E.2d at 10.

Even assuming that the Plaintiff is correct that Highlands attempted to convey the Property to R&R in July 2019, such conveyance would have been without legal effect. New Home Bldg. Supply, 259 N.C. at 683, 131 S.E.2d at 427; Younge, 70 U.S. at 641; Johnston, 203 F. at 736; White, 212 N.C. App. at 134, 713 S.E.2d at 10. Highlands did not sign the deed conveying

the Property to R&R until January 24, 2020.  [Doc. 1-2 at 102].  Because the deed could not have been delivered until after Highlands signed it, Highlands could not have conveyed the Property to R&R until January 24, 2020 at the earliest.

The Court dismissed the claims against Highlands and Johnson on January 17, 2020.  <u>See</u> <u>Parker Excavating, Inc. v. JOMCO Contracting, LLC, et al.</u>, No. 1:19-cv-00062-MR-WCM, 2019 WL 8012205, at *1 (W.D.N.C. Dec. 17, 2019), <u>report and recommendation adopted</u>, No. 1:19-cv-00062-MR-WCM, 2020 WL 261758 (W.D.N.C. Jan. 17, 2020) (Reidinger, J.).  Because the Property could not have been conveyed until January 24, 2020 at the earliest, the conveyance necessarily occurred after the Court dismissed the claims against Highlands and Johnson.  Accordingly, the Plaintiff's prior claims against Highlands and Johnson cannot be the basis for concluding that Highlands or Johnson owed the Plaintiff a debt when the Property was conveyed.

The Plaintiff presents three additional arguments to contend that Highlands, Johnson, and Homer were its debtors when the Property was transferred.  [Doc. 7 at 5].

First, the Plaintiffs claims that Highlands, Johnson, and Homer were liable for JOMCO's debt at the time of the transfer under a veil piercing theory

9

because "Johnson was acting for both [Highlands and JOMCO] at the time of the contracting." [Id.]. As discussed in the Court's prior Order dismissing the Plaintiff's claims against Highlands and Johnson, "[t]he mere allegation that the corporate entities had some overlapping owners or agents is insufficient to give rise to alter ego liability." Parker Excavating, Inc. v. JOMCO Contracting, LLC, No. 1:19-CV-00062-MR-WCM, 2020 WL 261758, at *1 (W.D.N.C. Jan. 17, 2020) (Reidinger, J.). While the Plaintiff's complaint presents some additional allegations regarding the ownership and operation of the entities, the Court again concludes that the Plaintiff's allegations are conclusory and insufficient to show that JOMCO, Highlands, and R&R were operated in a manner that disregarded their existence as sperate business entities or that any of those entities served as an alter ego of Johnson or Homer.

Second, the Plaintiff argues that Highlands was its debtor at the time of the transfer because the Plaintiff had asserted a lien against the Property in October 2018. [Id. at 4]. The Defendants argue that the lien had been discharged when Highlands transferred the Property to R&R. [Doc. 6 at 7-9]. A lien against real property is discharged if the party failed to enforce the lien within 180 days after the last furnishing of labor or material at the site. See N.C. Gen. Stat. §§ 44A-13(a); 44A-16(3). The Plaintiff's Notice of Claim

10

of Lien states that the Plaintiff last furnished labor or materials on October 19, 2018. [Doc. 1-2 at 124]. Accordingly, the Plaintiff had until April 17, 2019 to sue to enforce the lien. Because the Plaintiff never sought to enforce its lien, the lien has been discharged by operation of law. Accordingly, there was no lien on the Property at the time of the transfer.

Finally, the Plaintiff argues that the Defendants were its debtors because "there have been admissions of the debt." [Id. at 5]. Presumably, the Plaintiff is referencing its allegation that Homer met with the Plaintiff and "advised that he was the main owner of Highlands" and acknowledged that the Plaintiff "had completed work for Highlands and had not been fully compensated for the work." [Doc. 7 at 3; Doc. 1-2 at ¶ 46].[3] That allegation falls far short of establishing that Highlands or Homer acknowledged liability for JOMCO's debt or assumed responsibility for paying that debt. In short, Homer did not assume liability for JOMCO's debt by acknowledging that JOMCO owed the Plaintiff money.[4]

---

[3] The Plaintiff presents nothing to suggest that Johnson or R&R ever acknowledged the debt.

[4] Moreover, under North Carolina law, a promise to answer for the debt of another must be in writing. See N.C. Gen. Stat. § 22-1. The Plaintiff makes no allegation that Highlands or Homer ever entered into a written contractual agreement to assume liability for JOMCO's debt.

11

For these reasons, there is no basis from which the Court can conclude that Highlands, Johnson, or Homer were liable for any debt to the Plaintiff when the Property was conveyed to R&R. The Plaintiff has also presented no allegations to establish that R&R owed any debt to the Plaintiff at the time the Property was transferred. Accordingly, the Plaintiff fails to state a plausible claim against the Defendants under the UFTA and those claims will be dismissed.

### B. Fraud Claims

The Plaintiff next brings claims for fraud. While the Plaintiff's fraud claims are not a model of clarity, they seem to assert that Homer set up R&R "for the sole purpose of conveying the property and any potential revenue out of reach of the Plaintiff[,]" that Highlands failed to pay the amount that JOMCO owed to the Plaintiff, and that Johnson and Homer fraudulently concealed their use of various corporate structures from the Plaintiff.[5] [Doc. 1-2 at ¶¶ 72, 76].

To establish a fraud by misrepresentation under North Carolina law, a plaintiff must show a "(1) false representation or concealment of a material

---

[5] Rule 9 of the Federal Rules of Civil Procedure requires that an allegation of fraud must be pled with particularity. The Plaintiff's vague and ambiguous allegations, simply employing the word "fraud," leaves the Court to guess what fraud the Plaintiff might be alleging and falls far short of meeting this requirement. On this basis alone, the Plaintiff's fraud claim is subject to dismissal.

12

fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). To establish fraud based on the concealment of a material fact, a plaintiff must specifically plead

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 195 (M.D.N.C. 1997) (citations omitted). The party that allegedly failed to speak must have had a duty to disclose the information, such as when there is a "relationship of trust and confidence between the parties." Eli Research, Inc. v. United Commc'ns Grp., LLC, 312 F.Supp.2d 748, 759 (M.D.N.C. 2004). "Contracting parties in a commercial transaction are not in a relationship of trust and confidence." Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc., 989 F. Supp. 2d 471, 477 (E.D.N.C. 2013) (citations omitted).

13

To the extent that the Plaintiff bases its fraud claim on Highlands transferring the Property or owing the Plaintiff any money, those claims fail. As discussed above, Highlands could only have conveyed the Property to R&R after the Court dismissed the Plaintiff's claims against Highlands. Moreover, Highlands never owed the Plaintiff any money because the Plaintiff's contract was with JOMCO, not Highlands. There was nothing fraudulent about Highlands conveying an unencumbered property or refusing to pay a debt it did not owe,

To the extent that the Plaintiff bases its fraud claim on the Defendants' use of various corporate structures, those claims also fail. While the Plaintiff claims that Johnson and Homer have created numerous corporate entities, and that lawsuits have been filed against those entities, the Plaintiff presents no allegations to establish that any of the Defendants had a duty to disclose information about those corporate entities. The Plaintiff did not enter a contract with any of the Defendants, and even if it had, the mere fact that the parties contracted with one another is insufficient to establish a duty to disclose information. Rahamankhan Tobacco, 989 F. Supp. 2d at 477 (citations omitted). The complaint simply provides insufficient factual allegations, even accepted as true, to state a plausible claim for fraud.

14

## C. Chapter 75

The Plaintiff next brings claims under Chapter 75, asserting that the Defendants "committed a deceptive and unfair trade practice by forming multiple entities for the purpose of avoiding creditors and avoiding the cost of construction of their property." [Doc. 1-2 at ¶¶ 86-102].

A Chapter 75 claim requires (1) an unfair or deceptive act or practice; (2) in or affecting commerce; which (3) proximately caused actual injury to the claimant or their business. N.C. Gen. Stat. § 75-1.1. An act is deceptive "if it has a tendency or capacity to deceive." Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc., 989 F.Supp.2d 471, 477 (E.D.N.C. 2013). An act is unfair "if it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or amounts to an inequitable assertion of . . . power or position." Id. "The determination of whether an act is unfair or deceptive is a question of law for the court." Bernard v. Cent. Carolina Truck Sales, Inc., 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (1984).

To begin, the Court concludes that the Plaintiff's Chapter 75 claims against Johnson, Highlands, and Homer are barred by res judicata, which provides that once a claim has been litigated and resolved, it may not be reasserted elsewhere. Under res judicata, "a final judgment on the merits of

15

an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)). "In finding that the second suit involves the same cause of action, the court need not find that the plaintiff in the second suit is proceeding on the same legal theory he or his privies advanced in the first suit." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 210 (4th Cir. 2009). Rather, the first suit will preclude the second suit so long as the subsequent suit "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Aliff v. Joy Mfg. Co., 914 F.2d 39, 42 (4th Cir. 1990).

The Court previously dismissed the Plaintiff's Chapter 75 claims against Highlands and Johnson.[6] See Parker Excavating, Inc. v. JOMCO Contracting, LLC, et al., No. 1:19-cv-00062-MR-WCM, 2019 WL 8012205, at *1 (W.D.N.C. Dec. 17, 2019), report and recommendation adopted, No. 1:19-cv-00062-MR-WCM, 2020 WL 261758 (W.D.N.C. Jan. 17, 2020) (Reidinger, J.). For similar reasons, the Court denied the Plaintiff's request

---

[6] While the Court did not specify that the Plaintiff's claims were dismissed with prejudice, a dismissal under Rule 12(b)(6) in the Fourth Circuit is with prejudice unless the district court specifies otherwise. Carter v. Norfolk Cmty. Hosp. Ass'n, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice.").

for leave to amend its complaint to assert a Chapter 75 claim against Homer on futility grounds. See Parker Excavating, Inc. v. JOMCO Contracting, LLC, et al., No. 1:19-cv-00062-MR-WCM, 2019 WL 8012205, at *1 (W.D.N.C. Dec. 17, 2019). A dismissal under 12(b)(6) constitutes a final judgment on the merits that precludes a party from relitigating those issues. Fayetteville Investors v. Commercial Bldrs., Inc., 936 F.2d 1462, 1471 (4th Cir. 1991). Likewise, denial of a motion to amend based on futility constitutes a final judgment on the merits barring the assertion of those claims in a later action. Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 397 (4th Cir. 2006) (citation omitted). The Court previously dismissed the Plaintiff's Chapter 75 claims against Highlands and Johnson and concluded that the Plaintiff's Chapter 75 claim against Homer was futile. Accordingly, the Plaintiff is barred from reasserting those claims against those parties here.

The basis for the Plaintiff's Chapter 75 claim against R&R is unclear. Notably, the section of the complaint concerning the Chapter 75 claims does not even mention R&R. [Doc. 1-2 at ¶¶ 86-102]. Even taking all of the Plaintiff's allegations as true, they fail to state a claim against R&R or any of the other Defendants. In addition, the Plaintiff's assertion that the Defendants' use of the corporate and business entity laws of the State of North Carolina somehow constitute deceptive trade practices stands

17

corporate law on its head. Individuals and other entities may own multiple corporate and limited liability entities without running afoul of the law. The Plaintiff has alleged nothing indicating an abuse of those statutes. While the Plaintiff clearly takes umbrage with the protections afforded to corporate entities, the exercise of those protections simply does not constitute an unfair or deceptive trade practice as a matter of law. Bernard, 68 N.C. App. at 230, 314 S.E.2d at 584.

    **D.    Civil Conspiracy**

The Plaintiff next brings claims for civil conspiracy. [Doc. 1-2 at ¶¶ 60-67]. The elements of civil conspiracy under North Carolina law are: "'(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.'" Strickland v. Hedrick, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) (citations omitted). "There is no independent cause of action for civil conspiracy. Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement." Sellers v. Morton, 191 N.C. App. 75, 83, 661 S.E.2d 915, 922 (2008) (internal citations and quotations omitted). Because the Court is

18

Case 1:20-cv-00165-MR Document 9 Filed 03/29/21 Page 18 of 19

dismissing the Plaintiff's other claims, the Plaintiff's claims for civil conspiracy will also be dismissed.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss. [Doc. 5] is **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE**.

The Clerk of Court is respectfully directed to close this civil action.

**IT IS SO ORDERED.**

Signed: March 29, 2021

Martin Reidinger
Chief United States District Judge